IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13 CR 951 |
| v. | |
| LAURANCE H. FREED and CAROLINE WALTERS. | Honorable Robert M. Dow, Jr. |

### DEFENDANTS' REPLY AND SUPPLEMENTAL SUBMISSION TO EXCLUDE O'DONNELL TESTIMONY THAT FAILURE TO PAY REAL ESTATE TAXES WAS "CRIMINAL"

Defendants submit, as the Court requested at the Pretrial Conference, this further reply to their Motion to Exclude O'Donnell's Resignation Letter, and as a supplemental submission to exclude O'Donnell's proffered testimony that he told Walters that the failure to pay real estate taxes could be a "criminal" act.[1]

No part of this case or the charges against either defendant have anything to do with the criminal failure to pay property taxes. Rather, the only relevant allegations regarding property taxes is that the defendants misled the Bank of America bank group by purportedly concealing the existence of tax arrearages of two properties. The failure to pay those taxes is only relevant because it is the predicate for the subsequent alleged failure to disclose those arrearages to the

---

[1] The government concedes that O'Donnell's testimony that he told Walters about the supposed "criminal" nature of the failure to pay would be admissible only against Walters with a proper limiting instruction that it should not be considered by the jury against Freed. *See* Gov't Resp., p. 8. Nevertheless, because the taint from such testimony to Freed is manifest, he joins in this motion. Indeed, no limiting instruction could sufficiently address the very real danger that the spillover will unfairly prejudice Freed. *See United States v. Ciesiolka*, 614 F.3d 347, 358 (7th Cir. 2010) (reversing conviction and holding that limiting instruction did not sufficiently address the prejudice from the admission of other crimes evidence); *cf.* Fed. R. Evid. 105, Adv. Comm. Notes (noting a "close relationship" between that rule and Rule 403, such that the Court must consider the level of prejudice and the effectiveness of any limiting instruction). Rule 403 applies not only to the defendant against whom evidence is formally offered, but to any defendant who has to sit through a trial in which that evidence is presented. *See, e.g.*, *United States v. Figueroa*, 618 F.2d 934, 944-47 (2d Cir. 1980) (reversing conviction based on prejudice caused to defendant from admission of co-defendant's other crimes evidence).

banks. Whether the failure to pay property taxes could, in itself, be "criminal" – an untrue statement, and one which would lead to a virtual mini-trial on that extraneous issue – is completely irrelevant. More importantly, inserting the notion into the case that the failure to pay could be "criminal" would be improper anti-character evidence under Fed. R. Evid. 404(b), and certainly highly and unfairly prejudicial under Rule 403.

In its response to defendant's motion regarding Al O'Donnell's resignation letter, the government details Mr. O'Donnell's proposed testimony regarding that letter and his subsequent conversations with both defendants about his decision to resign. The government's argument to admit the letter and the testimony of those conversations is that the government is *not* seeking to admit them for their truth, but simply to show that defendants were on notice of certain supposedly relevant facts. *See* Gov't Resp., pp. 9-10. In particular, the government says that this evidence shows that defendants were on notice of two facts: (1) "the continued use of partnership cash as a funding source for ongoing obligations of the company," and (2) "that JFA had tapped real estate tax reserves." *Id.* Defendants agree that notice to them about those two facts is relevant, including the latter.[2]

The government thus will elicit testimony from O'Donnell that he told defendants (in separate conversations) that one of the reasons for his resignation was that property taxes were unpaid and needed to be paid. Again, defendants do not contest the admission of that testimony for the limited purpose of notice. Yet, the government seeks to go a step too far to convict defendants of a crime with which they are not charged: "Regarding the property tax escrow accounts, [O'Donnell] told defendant Walters and the other two direct reports that defendant

---

[2] To be more precise, the allegation of the existence of real estate tax arrearages and that the defendants fraudulently concealed or misrepresented them only applies to two properties (both wholly owned by Freed affiliates): Evanston Plaza and West Town Center. *See* Supers. Indict., ¶¶ 7-8. The only alleged victim concerning those allegations is the BoA bank group.

2

Freed's instructions [not to pay the taxes] could open them to civil and criminal liability if property taxes for Freed-owned properties went unpaid." *Id.* at 8.

      O'Donnell's opinion about potential criminal exposure for failure to pay real estate taxes is completely irrelevant – regardless of whether he said it to Walters. What is relevant, at most, is his notifying Walters that the taxes were unpaid. That is the predicate, and the only relevant one, for the actual charge of misleading the banks concerning the status of those payments. Not only is the "criminal" gloss on the failure to pay irrelevant, it would be so incredibly prejudicial that any arguable probative value would be undiscernible. Defendants would be forced to call expert and other witnesses to contradict O'Donnell's contention of criminality for failure to pay taxes.[3] The case would then turn, in large part, on whether the failure to pay is actually criminal – a complete frolic on the actual issue of guilt or innocence of the charges.

      Defendants' requested relief is very limited and would not impinge on the government's right to prove its case. The appropriate and necessary relief is an order excluding testimony that the failure to pay could be "criminal." O'Donnell's other proffered testimony, including the lack of payment of real estate taxes and his notice to defendants concerning that lack of payment, would be admitted. The Court should grant this limited relief.

---

[3]The evidence at trial will be that there were no actual mandated tax escrows for these properties. Even O'Donnell will testify that the tax "reserves" were self-imposed by JFA.

Dated: January 29, 2016                                Respectfully submitted,

                                                       LAURANCE H. FREED

                                                       By: /s/ Corey B. Rubenstein
                                                               One of His Attorneys

Mark L. Rotert
Corey B. Rubenstein
Andrea C. Halverson
STETLER, DUFFY & ROTERT, LTD.
10 S. LaSalle Street
Suite 2800
Chicago, Illinois 60603
(312) 338-0200
mrotert@sdrlegal.com
cruben@sdrlegal.com
ahalverson@sdrlegal.com

                                                       CAROLINE WALTERS

                                                       By: /s/ Thomas K. McQueen
                                                               One of Her Attorneys

Law Offices of Thomas K. McQueen, P.C.
41 S. Wynstone Dr.
North Barrington, IL 60010
847-381-1234
tkm@tmcqueenlaw.com

## **CERTIFICATE OF SERVICE**

    I, Corey B. Rubenstein, an attorney, hereby certify that the foregoing was filed and served on all counsel of record via the Court's CM/ECF system on this 29th day of January, 2016.

                                          /s/ Corey B. Rubenstein