**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | Case No. 13-cr-951 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LAURANCE H. FREED and | ) | |
| CAROLINE WALTERS | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss or Strike Certain Counts and Allegations of the Superseding Indictment [63]. For the following reasons, Defendants' motion [63] is denied.

**I.   Background**

Laurance Freed and Caroline Walters ("Defendants") are charged in a superseding indictment [52] ("Superseding Indictment") with engaging in schemes to defraud banks and other entities as well as making false statements to various banks in furtherance of the alleged schemes. At the outset, the Court notes that it has consulted the redacted and the sealed copies of the Superseding Indictment. See [52], [53]. For the purposes of this order, the Court cites to the redacted version. See [52].

The Government filed the original indictment on December 12, 2013. Each of the fourteen counts involved a tax increment financing ("TIF") note issued by the City of Chicago to a company called Uptown Goldblatt Venture ("UGV"). Sixteen months after filing the original indictment, the Government filed its Superseding Indictment [52]. The Superseding Indictment retained all the original allegations and charges of fraud on the banks arising from the double pledge of UGV's TIF note, but it added allegations of misconduct in regard to Kimco Realty. Thus, in the Superseding Indictment, Defendants are charged in Counts I through VII with bank

fraud in violation of 18 U.S.C. § 1344; in Count VIII with mail fraud in violation of 18 U.S.C. § 1341; in Count IX with wire fraud in violation of 18 U.S.C. § 1343; and in Counts X through XVI with making false statements to various banks in violation of 18 U.S.C. § 1014. Finally, the Superseding Indictment also contains two forfeiture allegations.[1]

Before the Court is Defendants' Motion to Dismiss or Strike Certain Counts and Allegations of the Superseding Indictment [63]. Defendants argue that the Government has improperly joined two separate schemes—one against the banks and one against Kimco Realty— in order to avoid the five-year statute of limitations on wire fraud that applies to the latter. The Government argues that the Superseding Indictment alleges that Defendants' deception of Kimco was part and parcel of their scheme to defraud the banks.

## II.   Legal Standard

"Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (internal quotation marks and citation omitted). Rather, a motion to dismiss or strike counts of an indictment seeks to identify and correct a defect in the indictment, such as "joining two or more offenses in the same count (duplicity)." Fed. R. Crim. P. 12(b)(3)(B)(i). Federal Rule of Criminal Procedure 7(c)(1) provides that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." In light of Rule 7(c)(1), the Seventh Circuit has held that "an indictment is legally sufficient if (1) it states all the elements of the crime charged, (2) adequately informs the defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions of the same offense." *United*

---

[1] Both defendants were charged in Counts I through XIII and both forfeiture allegations, but only Defendant Freed was charged in Count XIV and Count XVI and only Defendant Walters was charged in Count XV.

*States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). "To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *Id.* (citing *United States v. Dooley,* 578 F.3d 582, 589–90 (7th Cir. 2009)). "'The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *Id.* (quoting *United States v. Hausmann,* 345 F.3d 952, 955 (7th Cir. 2003)).

"Duplicity is the joining of two or more offenses in a single count." *United States v. Hughes,* 310 F.3d 557, 560 (7th Cir. 2002) (quotation marks and citation omitted). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Buchmeier,* 255 F.3d 415, 425 (7th Cir.2001) (quotation marks and citation omitted). In addition to jury confusion, "a duplicitous indictment may expose a defendant to other adverse effects including improper notice of the charges against him, prejudice in shaping of evidentiary rulings, in sentencing, in limiting review on appeal, and in exposure to double jeopardy." *United States v. Starks*, 472 F.3d 466, 470–71 (7th Cir. 2006) (quoting *Buchmeier*, 255 F.3d at 425). However, an indictment is not duplicitous if it charges a single offense carried out through many different means. *United States v. Berardi,* 675 F.2d 894, 897–98 (7th Cir. 1982). "Where the indictment 'fairly interpreted' alleges a 'continuing course of conduct, during a discrete period of time,' the indictment is not prejudicially duplicitous." *United States v. Davis*, 471 F.3d 783, 790-91 (7th Cir. 2006) (quoting *Berardi,* 675 F.2d at 898). "The line between multiple offenses and multiple means to the commission of a single continuing offense

3

is often a difficult one to draw", and "[t]he decision is left, at least initially, to the discretion of the prosecution." *Id.* at 791 (citing *Tanner,* 471 F.2d at 138).

**III.   Analysis**

Defendants raise three arguments in their motion to dismiss [63]: 1) that Count IX of the Superseding Indictment is duplicitous and should be dismissed or stricken; 2) that the allegations relating to Kimco should be dismissed or stricken from the bank fraud charge in Count I; and 3) that the City of Chicago should be dismissed or stricken from Count VIII because it is not a properly alleged victim of the mail fraud scheme. The Court addresses each argument in turn.

**A.    Whether Count IX of the Superseding Indictment is Duplicitous**

Defendants argue that the Superseding Indictment is duplicitous because the scheme to defraud involves different participants, victims, goals, and means. The mere fact that an indictment sets forth a number of ways or means to further a single scheme to defraud does not, by itself, render the indictment duplicitous. See *Buchmeier* 255 F.3d at 421 ("[A]n indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense.") (citing *Berardi*, 675 F.2d 894 at 898). According to the Government, the Defendants possessed the same goal: to obtain TIF funds and access to other financing from a consortium of banks so that Defendants' company could pay its operating expenses. The Government alleges the Defendants deployed various means over a long period of time (at least four years), but various means, so long as they are part of a common scheme, can be properly charged as one count. See *United States v. Davis,* 471 F.3d 783, 791 (7th Cir. 2006) ("The indictment sets out an ongoing and continuous course of conduct, accomplished through three different methods, that were repeated on numerous (likely daily) occasions over several years.");

4

*United States v. Zeidman*, 540 F.2d 314, 318 (7th Cir. 1976) ("Schemes to defraud by mail often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity.")  As laid out in the Superseding Indictment, the Government contends that the Defendants wire communications in regard to Kimco Realty "assist[ed] the [D]efendant[s] in avoiding detection," which are "sufficient to further a scheme."  *United States v. McGowan*, 590 F.3d 446, 457 (7th Cir. 2009).

As noted above, the Seventh Circuit has observed that "[t]he overall vice of duplicity is that the jury cannot in a general verdict render its findings on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both."  *United States v. Buchmeier,* 255 F.3d 415, 425 (7th Cir. 2001); see also *United States v. Hughes*, 310 F.3d 557, 560 (7th Cir. 2002); *United States v. Black*, 469 F. Supp. 2d 513, 534 (N.D. Ill. 2006).  In addition to the "overall" concern that a defendant might be convicted by less than a unanimous jury, the Seventh Circuit has identified three further dangers of a duplicitous indictment:  (1) that the defendant may not understand the charges against him, (2) that the defendant may be prejudiced by evidentiary rulings at trial, and (3) that the defendant may be subjected to double jeopardy.  *Berardi,* 675 F.2d at 899.  Of these concerns, Defendants focus only on the related questions of jury unanimity and double jeopardy.   They do not identify any potential prejudice from evidentiary rulings at trial, nor do they maintain that they do not understand the charges against them.  Indeed, both at the hearing on this motion and at the pre-trial conference, the Court confirmed that the parties have a common understanding concerning the Government's allegations in Count IX—namely, that in that count the Government is alleging a fraud against both Kimco and the banks.[2]

---

[2] Specifically, the Government alleges that (1) the transfers of money from the joint venture to Freed-controlled entities unaffiliated with the joint venture constituted a fraud against Kimco and (2) the

The Court is not persuaded by Defendants' argument that Count IX is duplicitous. The Superseding Indictment sets out an ongoing and continuous course of conduct, accomplished through different methods, for a specific period, albeit one that lasted from at least November 2007 to at least February 2011. Compare [52] at Count IX with *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006) (concluding that an indictment is not duplicitous where it alleges a continuous course of conduct using three different methods over several years). The Superseding Indictment properly charges only one scheme: one in which Defendants defrauded both their joint venture partners and their bankers. In part, the scheme involved taking money from their joint venture partners, which in turn, according to the government, devalued the collateral that had been pledged to the banks to secure continued access to needed financing. At the same time, Defendants allegedly made presentations to these various financial institutions that undervalued the joint venture's projected debt and the cost of sale of the Streets of Woodfield property and inflated the expected proceeds of that sale. As alleged, Count IX necessarily includes the two sets of victims of such a scheme: the Defendants' partners whose joint venture was surreptitiously devalued and the financial institutions that loaned funds secured by an interest in the portion of the same devalued joint venture that had been pledged as collateral.

In any event, even if Count IX were duplicitous, "dismissal is a disfavored remedy that should be avoided when appropriate clarifying jury instructions can redress concerns over a potentially duplicitous indictment." *United States v. Stewart*, No. 08 CR 720, 2009 WL 2149603, at *3 (N.D. Ill. July 17, 2009) (citing *United States v. Starks,* 472 F.3d 466, 471 (7th Cir. 2006)). The Seventh Circuit has concluded that jury instructions can sufficiently safeguard

---

subsequent misrepresentations about the value of the pledged portion of the joint venture (which had been diminished by the aforementioned transfers) amounted to a fraud against the banks. See Tr. at 20.

against possibly duplicitous counts. And this is especially true where, as here, the duplicity concern raised by Defendants focuses on which offense (or offenses), if any, the jury has passed judgment on in its verdict. See *United States v. Marshall*, 75 F.3d 1097, 1112 (7th Cir. 1996) (reasoning that "even if the offenses are arguably separate and distinct", the trial court's jury instruction ensured the jury's conviction relied unanimously upon one of the theories"); see also *United States v. Cherif,* 943 F.2d 692, 701 (7th Cir. 1991) (declining to consider the defendant's duplicity challenge because the problem could have been cured with a jury instruction, which the defendant neglected to provide). As the Seventh Circuit has explained, its "conclusion [in *Marshall*] that the indictment was not fatally flawed rested in large part on the fact that the district court had avoided prejudicing the defendant by instructing the jury that it was required to unanimously agree as to which of the offenses included in the disputed count the defendant had committed." *Buchmeier*, 255 F.3d at 425 (citing *Marshall*, 75 F.3d at 1112).

Defendants also argue that Defendant Walters' email to Kimco's CEO on June 7, 2010 was not in furtherance of the allegedly fraudulent scheme. Defendants point out that an essential element of a wire fraud is that the defendant caused an alleged wire communication for the purpose of carrying out a scheme and that Count IX, as laid out in the Superseding Indictment, does not include such an element. See [63] at 12. Here, though, "the relevant question is whether the wire communication 'is part of the execution of the scheme as conceived by the perpetrator.'" *United States v. McGowan*, 590 F.3d 446, 457 (7th Cir. 2009) (quoting *Schmuck v. United States,* 489 U.S. 705, 715 (1989)). According to the facts and charges alleged in the Superseding Indictment, Defendant Walters' June 2010 e-mail was designed to "lull" Kimco into accepting as a *fait accompli* the proposed repayment plan and to discourage Kimco's CEO from taking action that would prevent the Defendants from removing additional cash from the Streets

7

of Woodfield, which the Government contends Defendants did until February 2011. Communications that "lull a victim into a false sense of security after the victim's money had already been obtained, or that assist the defendant in avoiding detection may be sufficient to further a scheme." *United States v. McGowan*, 590 F.3d 446, 457 (7th Cir. 2009).

Defendants attempt to distinguish *McGowan* on the basis that the email reflects that both Walters and Kimco were aware of the allegedly unauthorized transfers and therefore, the email could not have been an attempt to "avoid[] detection." *Id.* However, the Seventh Circuit in *McGowan* referenced *two* types of communications—those that assist defendants in avoiding detection *and* those that lull a victim into a false sense of security. Importantly, the Superseding Indictment, the allegations of which the Court must presume to be true (see *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009)), suggests the latter. At trial, the jury may well determine that the email did not lull Kimco. However, at this stage, Count IX adequately alleges the wire communication was in furtherance of the fraudulent scheme because that count suggests that Defendants' intent was to lull Kimco into a false sense of security. See [52] at Count XI at ¶ 4 (asserting that email had the "purpose of delaying action by Kimco Schaumburg that would prevent Freed and Walters from taking additional cash from Streets of Woodfield").

Furthermore, taken as a whole, the scheme laid out in the Superseding Indictment triggers the 10-year statute of limitations provision for financial institutions, 18 U.S.C. § 3293. As charged, the scheme to defraud Kimco included taking unauthorized amounts of money from the joint venture, which was, in part, funded by financial institutions. Logically, such unauthorized withdrawals would not only harm Kimco as the partner in the joint venture, but also have a "direct negative impact" on the financial institution—namely, exposing the institution to new or greater risk of loss. *United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003).

In sum, the Court concludes that the Superseding Indictment contains the required elements and provides sufficient notice to Freed and Walters of what the government intends to prove. Count IX is not duplicitous, and even if it were, a special verdict form will ensure the jury's unanimity on that count in the event of a conviction. The Court also concludes that the government properly alleges that the wire communication from Walters dated June 7, 2010, was in furtherance of the overall scheme because the Superseding Indictment characterizes that communication's purpose as lulling Kimco into a false sense of security. Accordingly, the Court denies Defendants' motion to dismiss Count IX. The Court will, however, supply the jury with instructions and a special verdict form regarding Count Nine to ensure unanimity on that count in the event of a conviction.[3]

### B. Whether Paragraph 9 of Count I is Properly Alleged

Defendants argue that the government has improperly included the Kimco allegations in the alleged scheme to defraud Bank of America in Count I of the Superseding Indictment. As Defendants see it, "[t]he actual debt *of the joint venture*, according to the government, was at least $3 million higher because of defendants' misappropriation of funds *from the joint venture*," but "[m]isappropriation of money *from* the joint venture would create a debt owing *to* the joint venture, not a liability *of* the joint venture." [63] at 14. However, the Court must read the Superseding Indictment "practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *United States v. Fassnacht,* 332 F.3d 440, 446 (7th Cir. 2003) (citation omitted). The scheme charged in the Superseding Indictment alleges that defendants surreptitiously took money from the KF Schaumburg LLC joint venture. See [52] at ¶ 9. Specifically, by April 30, 2009, more than $3 million that should have remained in the joint

---

[3] The Court requests that the parties consult the existing analogous case law and work together to craft any proposed instructions and the special verdict form to implement this ruling.

9

venture instead had been funneled into accounts controlled by Defendants. Reading the indictment as a whole and in the light most favorable to the Government, the Court reads Count I as facially valid.

### C. Whether the City of Chicago is Properly Alleged as a Victim in Count VIII

In the Superseding Indictment, Count Eight alleges a mail fraud scheme based on the same conduct alleged in the Count One bank fraud scheme. The difference is that the mail fraud scheme sought to "obtain money and property from the City of Chicago." [52] at ¶ 2 of Count Eight. The indictment thus characterizes Defendants' allegedly false affidavits used in their TIF application as "materially false and fraudulent pretenses, representations and promises." *Id.* Defendants insist that "the indictment itself reflects that those funds were not the City's money or property when paid, but rather belonged to the banks because of the loan defaults." [63] at 15 (quoting [52] at Count Eight, incorporating ¶ 10-11 of Count One) (alleging that "the bank consortium and Cole Taylor were entitled to the TIF payments" because of the loan defaults, and "Freed and Walters knew at the time they sent the forms and false affidavits to the City of Chicago that the bank consortium and Cole Taylor were entitled to the TIF payments.") Defendants make much of the dispute over which entity had a superior right to the TIF funds once the TIF payments were made. They argue that the TIF notes "were not the City's money or property when paid, but rather belonged to the banks." [63] at 15.

Here too, the Court must read the Superseding Indictment "practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *Fassnacht,* 332 F.3d at 440 (citation omitted). As the Superseding Indictment lays out, under the Redevelopment Agreement, UGV was required upon the disbursement of TIF funds to guarantee that certain conditions would be met, among them that UGV "was not in default with respect to any

10

agreement relating to the borrowing of money." Superseding Indictment at ¶ 1(f). The Superseding Indictment also alleges that if UGV failed to meet these conditions, "the City of Chicago would no longer be obligated to make TIF payments." *Id.* Thus, a practical reading of the indictment suggests that the City was not obligated to make TIF payments regardless of who has a right to the TIF funds. The Superseding Indictment alleges that the City was not obligated to make TIF funds available in the first place if UGV violated the Redevelopment Agreement. At trial, the government may be unable to prove that the City was a victim of Defendants' alleged wire fraud scheme or that in the event of Defendants' violating the Redevelopment Agreement, the City would simply pay the TIF funds to the banks. However, the standard for the Court at this stage of the litigation is whether the inclusion of the City as a victim in Count 8 is facially valid. The Superseding Indictment "adequately informs" Defendants "of the nature of the charges against them," and will allow Defendants to assert the judgment in this case "as a bar to future prosecutions of the same offense." *Vaughn*, 722 F.3d at 925. Accordingly, the Court denies Defendants' motion to strike the City as a victim of the alleged wire fraud scheme.

**IV. Conclusion**

For the reasons discussed above, the Court denies Defendant's motion [63]. The Court plans to supply the jury with instructions and a special verdict form regarding Count Nine to ensure unanimity on that count in the event of a conviction.

Dated: February 1, 2016

Robert M. Dow, Jr.
United States District Judge