**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 13 CR 951-2 |
| CAROLINE WALTERS, | Honorable Robert M. Dow, Jr. |
| Defendant. | |

**DEFENDANT WALTERS' POSITION PAPER ON SENTENCING FACTORS**

NOW COMES the Defendant, Caroline Walters, by her attorney, Thomas K. McQueen, and respectfully submits her position paper pursuant to Fed. R. Crim. P. 32(c) and Local Crim. R. 32.1(g) for purpose of her sentencing by this Court on September 1, 2016.

### I.   INTRODUCTION

Defendant has entered a plea of guilty to Count 15 of the Superseding Indictment filed by the Grand Jury alleging a violation of the false statement to a financial institution stature, 18 U.S.C.§ 1014. The Defendant appears before the Court as a 55 year old corporate treasurer never before accused of a crime who has been consistently employed during her adult life. The Defendant has frankly admitted to having committed the charged conduct presented in Count 15. In accordance with the written plea agreement (Doc. 106), the Government will dismiss the remaining counts of the Superseding Indictment at sentencing. Mrs. Walters is a permanent resident of the United State holding a Green Card. Her parents, sister, husband, and two of her three children reside in Northern Illinois.

1

## II. OBJECTIONS TO THE PRESENTENCE REPORT

As reflected in the Presentence Report, the written Plea Agreement and the proceedings before this Court in February, the Defendant has completely and unequivocally entered a plea of guilty to the offense of making a false statement in November 2009. Knowing that the Presentence Report ("PSR") follows a defendant after the ultimate imposition of sentence, it is important that errors should be corrected and that inclusion of improper material should be stricken from the PSR before the imposition of sentence. The Defendant presents the following objections or corrections to statements in the Presentence Report:

**Paragraph 3**: The Defendant was released on a $25,000 bond secured by real estate.

**Paragraph 14**: Only the TIF Project Note was pledged in 2007 by UG to the Bank of America Consortium causing a double pledge.

**Paragraph 22**: The final sentence should read, "The documents included a form cover letter signed by the defendant…"

**Paragraph 23**: After the second sentence, we request the following addition: "There is no evidence defendant knew of the 2007 lockbox requirement when she took possession of the TIF payments."

After the final sentence: "Defendant disputes any culpability for, or actual loss to, Bank of America when she had no knowledge of the lockbox requirement."

**Paragraph 25**: The first sentence should be revised to read: "… in December 2010, the defendant sent a form cover letter…"

**Paragraph 26**: The last clause of the final sentence: "and declined to participate in an interview with investigation agents" should be stricken as Defendant had no obligation under the Constitution to speak with government agents.

**Paragraph 27**: It is the position of the Defendant that the 20 level intended and actual loss increase to the Base Offense Level is not supposed by the evidence and the Base Offense Level of 7 (§ 2 B1.1 (a)(1)) should be decreased by two points for acceptance of responsibility (§ 3E1.1(a)), rendering a Total Offense Level of 5 (0-6 months).

We believe that, if the Court rejects some or all of our loss arguments, the ultimate issue before this Court is whether a sentence within the advisory Sentencing Guidelines range (of 51 to 63 months under the PSR) is appropriate in this case. We will address the bases of our arguments that the advisory range is wildly inappropriate and, in any event, where all sentencing factors are considered by the Court, the advisory range produces a sentence much greater than is necessary in this case for this Defendant.

### III.    THE APPLICABLE GUIDELINES

A.  The Loss (Intended and Actual) Calculation under Section 2B1.1 (b)(1)

The government argues, and the Probation Department agrees, that an intended and actual loss from relevant conduct which they attribute to Mrs. Walters totals $11,916,411, thus increasing the offense level by 20. (§ 2B1.1 (b)(1)(K)). The evidence does not support such a loss figure. Significantly, with respect to the conduct of conviction, the Government's Version, after five years of investigation and prosecution, acknowledges that any Count 15 is intended or actual loss remains "unknown." Gov. V. at p. 25.

We must be mindful that the offense of conviction is a false statement to Cole Taylor Bank (not the Bank of America consortium) regarding efforts to correct the erroneous double pledge of the TIF Project Note. Relevant Conduct loss, according to the government, has three components:

1. A $10 million intended loss arising from the purported failure to offer additional collateral at the December 15, 2008 presentation;
2. An $880,211 actual loss of proceeds of the December 2009 TIF notes payments: and
3. A $1,036,200 intended loss from the December 2010 TIF notes payment request.

We will address each separately.

1.  **Definition of Loss**

The Sentencing Guidelines define actual loss as "the reasonably foreseeable pecuniary harm that resulted from the offense" and intended loss as "the pecuniary harm that the defendant purposely sough to inflict;…" Section 2B1.1, App. Note 3.(A)(i) and (ii)(I). The Seventh Circuit has made clear that "intended loss" requires establishing the defendant's subjective intent to cause a loss; knowingly intending a virtually certain or probable loss. *United States v. Middlebrook*, 553 F. 3rd 572, 578 (7th Cir. 2009); *United States v. Fearman*, 297 F. 3rd 660, 661 (7th Cir. 2002); *United States v. Higgins,* 270 F. 3rd 1070, 1075 (7th Cir. 2001) (Intended loss is loss the defendant actually intended to impose on the victims). An intended loss, for example, would include a scheme where the defendant had no intention of repaying a bank loan. *United States v. Schneider*, 930 F. 2d 555, 559 (7th Cir. 1991). In assessing an objective financial risk, the Court will focus on the amount the bank <u>intended</u> to issue, minus any financial recovery. *United States v. Radziszewski*, 474 F. 2d 480, 482 (7th Cir. 2007). Seeking a loan for a legitimate

use which the borrower truly intends to repay does not meet the intent requirement. *See Unites States v. U.S. Gypsum*, 438 U.S. 422, 445 (1978).

### 2. The Evidence of Mrs. Walters' Intent

Mrs. Walters was Treasurer of JFA when Al O'Donnell, the CFO, abruptly left the company in 2008. The in depth working knowledge of the financial representations in GX. 12/15/08 Presentation ("Presentation") was that of JFA financial analyst Joe Florczak, not Mrs. Walters. Mrs. Walters knew on December 15, 2008 that JFA, by Mr. Florczak's calculations, then had collateral in excess of $170 million, plus Mr. Freed's personal guarantee, to cover the existing $105 million borrowing. There can be no dispute that the banks were keenly aware of Mr. Freed's personal assets and net worth. The Presentation discussed additional potential collateral in GX 12/15/08 Presentation at p. 11. To contend that Mrs. Walters intended to obtain an additional $10 million from the consortium without collateral is preposterous. As the evidence at Mr. Freed's trial established, after the Presentation, the loan discussions in early 2009 promptly turned to documentation supporting new and additional collateral to which Mr. Katunis generally agreed. Importantly, the TIF notes, pledged as collateral in 2007, were intended by the banks to be excluded from the new, expanded line of credit. Without proof that Mrs. Walters negotiated with the bank intending never to repay the additional $10 million, the $10 million was never at risk.

Secondly, as for the "actual loss" from the TIF payments JFA sought in December 2009, where Mrs. Walters simply signed a generic cover letter, there is absolutely no evidence that she was knowledgeable about the 2002 Redevelopment Agreement (four years before her JFA employment), or that she had any knowledge of the 2007 revised agreement requiring a lockbox

5

payment of proceeds of the Area and Project notes. Without establishing her knowledge of the lockbox agreement, she cannot have intended to cause the bank a loss. Most importantly, the Project Note payment ultimately went to Cole Taylor Bank which held the senior lien in the erroneous double pledge.

Next, to establish intended loss with the December 2010 TIF note reimbursement request, the government must establish that Mrs. Walters intended not to pay Cole Taylor the Project Note proceeds as JFA did the previous year. What is more, Bank of America and the City of Chicago were clearly aware no later than April 2010 of the 2009 TIF note payments to JFA, so there was neither concealment nor actual fraud in the December 2010 request that was never granted. Defendant had no control over the City's TIF payment. But more importantly, Mrs. Walters did not personally profit from any aspect of this scheme.

Finally, the Sentencing Guidelines make clear that a credit against loss – should the Court find any intended or actual loss in the case at bar – is appropriate where:

> In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral [is a credit against loss]…

Section 2BI.I., App. Note 3.(E)(ii). In the instant case, the banks have executed a release with JFA and returned the TIF notes to JFA.

**B. Application of a Mitigating Role Adjustment under Section 3B1.2 or a Section 2B1.1 Departure**

Whether the Court would consider the application of a mitigating role as a minor or minimal participant in the criminal activity under Guidelines Section 3B1.2, or take the following facts into consideration under its 18 U.S.C. § 3553 analysis, it is clear that Mrs.

Walters deserves substantial mitigating consideration where there has been such an overemphasis by the Guidelines on the singular component of loss. As the Court well knows, the Sentencing Commission in 2015 modified to several white-collar guidelines, including those affecting economic crime and mitigating role. In its April 9, 2015 news release, the Sentencing Commission said that "the change [in the fraud guidelines] is intended to encourage courts to ensure that the least culpable offenders such as those who have no proprietary interest in a fraud, receive a sentence commensurate with their own culpability without reducing sentences for leaders and organizers." Statement of Chief Judge Patti B. Saris, Chair of the United States Sentencing Commissions (4/9/15). Thus, the Mitigating Role section now provides:

> [A] defendant who is accountable under § 1B1.3 for a loss amount under §2B1.1… that greatly exceeds the defendant's personal gain from a fraud offense… may receive an adjustment under this guideline.

Section 3B1.2, App. Note 3.(A).

Mrs. Walters, unlike defendants in many cases, had no personal gain in the case at bar. The ultimate issue before this Court is certainly not one of liability. Mrs. Walters frankly admitted her false statement to Cole Taylor Bank. Having established liability though, the focus of the Court and the parties should be on the level of her criminal culpability. As the evidence at Mr. Freed's trial showed, the relative culpability considerations in this case between Mrs. Walters and Mr. Freed are substantially different. Mrs. Walters received no personal benefit at all from this scheme. The majority of Mrs. Walters' role was to respond to the bank's requests for documentation to support JFA negotiation efforts.

Regardless of the Court's ultimate conclusion on whether a "minor" or "minimal" participant reduction is appropriate under the Section 3B1.2, the issue of culpability certainly should entertain consideration by the Court of departure downward when it ultimately calculates

the appropriate sentence. Beyond a mitigating role adjustment, there are also downward departure considerations under Section 2B1.1, App. Note 20.(C). There, the Court may depart downward in "cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense." We command this directive to the Court as it considers the appropriate sentence for Mrs. Walters.

### C. Sentencing Considerations

#### 1. The Post-Booker Era of Sentencing

Designed as being mandatory under the Sentencing Reform Act of 1984, the Federal Sentencing Guidelines were rendered advisory by the Supreme Court in its decision in *United States v. Booker,* 543 U.S. 220 (2005). The sentencing court's ultimate sentence is to be derived from the Court's analysis of the statutory 18 U.S.C. § 3553(a) sentencing factors underpinning the Federal Sentencing Guidelines. In that analysis, several factors are of import including the defendant's age, her lack of any prior involvement with the criminal justice system, and the low risk of recidivism that she presents as she is sentenced. The Court's responsibility, as it well knows, is to establish and "impose a sentence sufficient, but not greater than" that which is necessary to reflect and accomplish the sentencing purposes of Section 3553(a). A sentence should be fashioned such that the punishment "should hit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (citation omitted).

In the post-*Booker* world, the trial court is recognized as being in a "superior position" to make as assessment applicable to the facts of the case and the individual defendant in determining the ultimate sentence and particularly whether a variance from the Guidelines recommendation is appropriate. *Gall v. United States*, 552 U.S. 38 (2007). As the Court in *Gall*

recognized, there is no longer a need for extraordinary circumstances existing for the sentencing judge to impose a non-Guidelines sentence. The focus of the Court is upon the "reasonableness" of the sentence imposed and the Guidelines are only advisory. *Gall* at 46-47. Today, the Guidelines are simply the "starting point and the initial benchmark." *Id*. at 49. As the Supreme Court has noted, "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensure." *Koon v. United States*, 518 U.S. 81, 113 (1996).

### 2. Section 3553(a) Considerations

The Court may sentence inside or outside the Guidelines range at its discretion, as long as all of the factors of Section 3553(a) have been considered. Indeed, it is the Court's duty to "make its own reasonable application of the Section 3553(a) factors, and to reject (after consideration of) the advice of the Guidelines" if the result of what the Guidelines suggests does not comport with the sentencing court's views of an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J. concurring). Thus, the sentencing courts once again enjoy sentencing discretion in the post-*Booker* world. *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005).

The factors listed in 18 U.S.C. § 3553(a), which the Court shall consider, include: (1) the history and characteristics of the defendant and the nature and circumstances of the offense (§ 3553(a)(1)); (2) the need to reflect the seriousness of the offense, promote respect for the law and provide just punishment (§ 3553(a)(2)(A)); (3) the need to afford adequate deterrence (§ 3553(a)(2)(B)); (4) the need to protect the public (§ 3553(a)(2)(C)); and (5) the need to provide

education or treatment to the defendant (§ 3553(a)(2)(D)). The sentencing Court has discretion to determine what weight to place upon each of these statutory factors. *See United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006). ("[T]he statute does not weight the factors. That is left to the sentencing judge, within the bounds of reason, which are wide.").

a. **Mrs. Walters' Personal History, Characteristics and the Offense**

Section 3553(a)(1) requires that the Court consider the nature and circumstances of the offense together with the history and characteristics of the Defendant. Mrs. Walters comes before the Court as a 55 year old with an otherwise unblemished record, an extremely strong family, a record of advanced education, consistent employment success and a long-term devotion to her employers. See *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (history and character of the defendant are grounds for a reduced sentence that meets the purposes of sentencing under Section 3553(a)). Her family, education, and employment background is well documented and accurately detailed in the Presentence Report.

Her background, business ethics and personality have been aptly described by the family members, business associates and friends who have provided the Court with letters on her behalf. Those letters repeatedly praise Mrs. Walters' integrity, honestly, reliability and moral character, dedication to employment, commitment to family, and being compassionate, charitable and caring. High praise, indeed.

There can be no question that the offense to which Mrs. Walters has entered her plea is a serious one. Tragically, her inability to avoid the false statement as the economy crushed JFA has placed her at the mercy of the Court. That having been said, it is important that the Court focus on the sentence that gives Mrs. Walters a reasonable opportunity to reenergize her

employment opportunities (now limited by a felony conviction) to provide a platform to continue to support her family through her historic integrity and truly admirable character. Her life has been in shambles since 2010 with JFA defaults, foreclosures, civil litigation, and ultimately this prosecution in 2013 weighing heavily upon her. A lengthy imprisonment is neither appropriate nor necessary for this humble, contrite, good and decent woman.

    b.  Section 3553(a)(2)(A)

The next consideration of the Court is that it impose a sentence which will reflect the seriousness of the offense and promote respect for the law as well as provide just punishment for the offense. The PSR Advisory Guideline calculation Total Offense Level 24 in this case yields a range of 51 to 63 months incarceration driven primarily (65%) by the relevant conduct loss.

We respectfully suggest that a substantial downward departure is appropriate in this case (or a variance) as provided in Application Note 20 to Guidelines Section 2B1.1(b). The Application Note makes clear that it is appropriate for the Court to consider a downward departure where the Guideline calculation "substantially overstates the seriousness of the offense." App. Note 20(C). Here, a fair consideration by the Court is one which focuses upon the instant offense as a microcosm of the entirety of Mrs. Walters' more than 25 years of devotion to the proper, lawful business of her employers before being beset by the market collapse of 2009. Most importantly, she received none of the fruits of the crime and the offense of conviction led to no loss.

    c.  Section 3553(a)(2)(B)

Next, the Court is to consider a sentence which affords adequate deterrence to future criminal conduct. In the case at bar, the manner and means of the criminal conduct are no

11

negated by her felony conviction. The lessons learned by the dramatic damage to her years of professional development in the financial world from her conduct and her plea in this case, reflect a very substantial and compelling deterrence to the Defendant herself. Further, it is well accepted that increases in the severity of punishment cannot be proven to deter others. Mrs. Walters does not need, for deterrence purposes, or deserve a prison sentence of the magnitude suggested by the advisory Guidelines calculation.

    d.  Section 3553(a)(2)(C)

The Court is next required to consider a sentence which will protect the public from further crimes of this defendant. Again, we suggest that the Defendant's spotless business history and her own actions in pleading guilty to Count 15, is evidence that there is little basis for concern about recidivism. Further, the admission of guilt negating the manner and means of future similar offenses, the total lack of criminal history, and the Defendant's age, 55, all statistically militate heavily against recidivism.

    e.  Section 3553(a)(2)(D)

Finally, under this component of the statutory analysis, the Court is required to consider a sentence that will provide the defendant with training or treatment in the effective manner. In the case at bar, thankfully, there is no need for treatment intervention.

    f.  **Avoiding Unwarranted Disparities**

Under Section 3553(a)(6), the Guidelines direct courts specifically to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." There is precedent in this district and circuit for sentences of

very brief incarceration. As a Class B Felony, a violation of 18 U.S.C. § 1014 precludes the defendant from receiving probation. See 18 U.S.C. § 3561 (a)(1). However, discretionary terms the Court might have considered for probation may be incorporated into supervised release. See 18 U.S.C. § 3563 (d).

Recently, in *United States v. Holmer,* No. 15 CR 708 (N.D. Ill), Judge Wood sentenced the defendant in a similar false statement case with no actual loss to credit for time served. (Exhibit 1). A similar sentence was imposed in *United States v. Khan*, No. 13 CR 625 (N.D. Ill.), a bank fraud conviction with a $340,000 loss. (Exhibit 2). See also *United States v. Klinker,* No. 1:10 CR 4-TLS (N.D. Ind.) (bank fraud sentence of two days with a condition of six months of home confinement with a $150,000 loss). (Exhibit 3). We commend these cases for the Court's consideration.

### IV. CONCLUSION

When each of these factors is considered, and particularly the strong evidence of a Guidelines advisory calculation which substantially overstates the seriousness of Mrs. Walters' culpability in this aberration offense, we respectfully ask the Court to calculate a substantial variance or downward departure from the advisory Guideline level in imposing the sentence upon Mrs. Walters with a focus not on the unprovable loss, but on Mrs. Walters' complete lack of gain from the fraud.

Mrs. Walters has no prior criminal history and, but for this matter, has otherwise led not a simply blameless, but an exemplary life. We ask the Court to recommend that any period of incarceration be limited to no more than a matter of months at most, giving due consideration to her possible deportation. Because, as the Presentencing Report clearly documents, she has

13

limited financial means which ought to be focused on statutorily mandatory restitution, if any, we respectfully request that the Court waive any penal fine and other discretionary costs and attendant interest.

Dated: August 11, 2016                                Respectfully submitted,

                                                      CAROLINE WALTERS

                                                      By: s/ Thomas K. McQueen

                                                           Thomas K. McQueen

Thomas K. McQueen
Law Offices of Thomas K. McQueen, PC
41 South Wynstone Drive
North Barrington, IL 60010
(847) 381-1234
tkm@tmcqueenlaw.com
ARDC No. 1869671

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a copy of Defendant Walters' Position Paper on Sentencing Factors was filed August 11, 2016, via this Court's ECF filing system.

s/ Thomas K. McQueen